IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC FRANKLIN SASS,<br><br>      Petitioner,<br><br>vs.<br><br>CRAIG KOENIG, Acting Warden,<br>Correctional Training Facility,[1]<br><br>      Respondent. | No. 2:14-cv-01124-JKS<br><br>MEMORANDUM DECISION |

    Eric Franklin Sass, a state prisoner represented by counsel, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Sass is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at the Correctional Training Facility in Soledad, California. Respondent has answered, and Sass has replied.

              I. BACKGROUND/PRIOR PROCEEDINGS

    On May 12, 2010, Sass was charged with eleven counts of lewd and lascivious acts upon a child under the age of 14 (Counts 1-5, 7-12) and one count of misdemeanor lewd and obscene conduct (Count 6). The information further alleged as to Count 3 that the offense involved substantial sexual conduct. Sass pleaded not guilty and denied the special allegation. On direct appeal of his conviction, the California Court of Appeal laid out the following facts underlying the charges against Sass:

      From 2003 through 2009, [Sass] and his girlfriend lived together with her twin
   children, Matthew and A.B. [Sass] and his girlfriend had three children together, and

---

   [1]  Craig Koenig, Acting Warden, Correctional Training Facility, is substituted for Jeffrey A. Beard, former Secretary, California Department of Corrections and Rehabilitation. FED. R. CIV. P. 25(c); Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts; *Stanley v. Cal. Supreme Court*, 21 F.3d 359, 360 (9th Cir. 1994).

> A.B. referred to [Sass] as "Dad." [Sass] started molesting A.B. when she was around eight years old. The molestation included [Sass] rubbing A.B.'s genitals with his hands and penis. [Sass] was arrested on April 6, 2010. At trial, [Sass] argued that he suffered from a neurological impairment that affected his impulse control, sexuality, and memory.

*People v. Sass*, No. C067516, 2012 WL 5984465, at *1 (Cal. Ct. App. Nov. 29, 2012).

On July 20, 2010, Sass proceeded to a jury trial. At the conclusion of that trial, the jury announced that it could not reach a verdict and the trial court declared a mistrial. A second jury was empanelled on October 19, 2010. On October 27, 2010, this jury found Sass guilty of all counts. The jury also sustained the substantial sexual contact allegation, rendering Sass ineligible for probation. The trial court sentenced Sass to an aggregate imprisonment term of 24 years.

Through counsel, Sass appealed his conviction, arguing that: 1) the trial court and trial counsel failed to conduct sufficient voir dire examination of the prospective jurors; 2) the trial court erred in failing to correct the prosecutor's statement to the jury that expert testimony on child sexual abuse accommodation syndrom would "corroborate" the victim's testimony; and 3) the court erred in giving the jury an inaccurate and overly broad definition of "masturbation." The Court of Appeal unanimously affirmed the judgment against Sass in a reasoned, unpublished opinion issued on November 29, 2012. *Sass*, 2012 WL 5984465, at *4. Sass filed a counseled petition for review in the California Supreme Court, raising all claims unsuccessfully raised before the Court of Appeal, which was denied without comment on February 27, 2013. Sass then filed in the Supreme Court a counseled petition for a writ of habeas corpus in which he alleged that defense counsel provided ineffective assistance with respect to an offered plea deal. The habeas petition was summarily denied on March 19, 2014. His conviction became final on direct review 90 days later, when his time to file a petition for certiorari in the U.S. Supreme

Court expired on June 19, 2014. *See Jiminez v. Quarterman*, 555 U.S. 113, 119 (2009); *Spitsyn v. Moore*, 345 F.3d 796, 798 (9th Cir. 2003).

Sass timely filed a counseled Petition for a Writ of Habeas Corpus in this Court on May 6, 2014. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS/CLAIMS

In his counseled Petition before this Court, Sass raises the sole argument he raised to the state courts on habeas review; namely, that trial counsel rendered ineffective assistance with respect to the offered plea bargain.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

3

power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

A.  Merits

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Sass must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

The *Strickland* standard also applies to claims of ineffective assistance during the plea bargain process. *See Lafler*, 132 S. Ct. at 1384 ("During plea negotiations, defendants are 'entitled to the effective assistance of competent counsel.'" (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). Specifically, "a defendant has the right to make a reasonably informed decision whether to accept a plea offer." *See Turner v. Calderson*, 281 F.3d 851, 880 (9th Cir. 2002) (citation omitted). Accordingly, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012); *see also United States v. Blaylock*, 20 F.3d 1458, 1466 (9th Cir. 1994) ("[A]n attorney's failure to communicate the government's plea offer to his client constitutes unreasonable conduct under prevailing professional standards."). To show prejudice from ineffective assistance of counsel "where a plea offer has lapsed or been rejected because of counsel's deficient performance, [a petitioner] must demonstrate a reasonable probability" (1) he "would have accepted the earlier plea offer"; and (2) "the plea would have been entered without the prosecution canceling it or the

6

trial court refusing to accept it, if they had the authority to exercise that discretion under state law." *Frye*, 132 S. Ct. at 1409.

Here, Sass contends that, at the time of his bail hearing, the prosecution made an off-the-record offer of 3 years' imprisonment in exchange for Sass's guilty plea.[2] Sass does not dispute that trial counsel conveyed the offer to him, but instead argues that counsel "failed to account for [Sass's] inability to process and recall information" due to "an unusual medical condition." Pet. at 1. As a result, Sass avers that he "forgot that there had even been a plea offer, and consequently came to believe that the prosecutor was insisting on the highest possible sentence, when in fact a very favorable bargain had been offered."

In support of his claim, Sass attaches his own declaration stating that he wrote a letter to his brother on May 10, 2010, roughly one month after the April 12, 2010, bail hearing after which the offer was made. In that letter, which is not part of the record, Sass stated that he was contemplating an offer of 3 years, and there was a possibility that the offer would be even lower. Sass alleges that he "had no way to know that the offer of three years in state prison was quite favorable under the circumstances." He declared, however, that he "would have readily taken a negotiated plea agreement of three years," but does not believe that it was ever recommended to him. Sass also provides the declaration of his brother, who confirms that Sass wrote him a letter

---

[2] Sass provides nothing but his own assertion (and a declaration from his brother indicating that Sass wrote him a letter at the time of the offer that a 1 or 2 year deal had been offered) that a 3-year deal was in fact offered. The declaration from trial counsel only states that a plea offer was made and conveyed to Sass. Notably, during the bail hearing, the prosecutor indicated that Sass was probation-ineligible as charged and that any resolution of the case would necessarily involve a "significant amount of time in prison." Likewise, Sass provides no other evidence that counsel failed to advise him in the manner he now argues would have been appropriate. Counsel's declaration does not describe the manner in which the offer was conveyed and Sass himself declares that he has "no memory" of their conversation.

7

about the "possibility of a rather short sentence" but did not refer to a specific plea offer. Sass's brother opined that Sass "would have readily agreed to a favorable plea disposition if it had been properly explained to him." Sass also submits declarations from his parents, who retained defense counsel, and his aunt, who all state that they were unaware that a plea offer had been made. Sass further provides a declaration from his trial counsel who states, "I recall that a plea offer was made prior to trial. I communicated the offer to Mr. Sass. The decision to take or reject the offer was up to Mr. Sass."

The thrust of Sass's claim is that counsel had an obligation to accommodate Sass's "unusual medical condition" by promptly advising Sass on the importance of accepting the favorable plea offer. According to Sass, defense counsel did not communicate Sass's total exposure if he went to trial, did not explain the risks of conviction, did not reiterate the offer, and did not state when it would expire. Sass avers that, if he had done so, Sass would have readily accepted the offer as he was eager to avoid trial for the sake of the victim.

The Supreme Court has cautioned against evaluating ineffective assistance claims based on generalized rules, noting that "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Strickland*, 466 U.S. at 688-89. But it does not follow that *Strickland* requires that an attorney advise his client in a particular manner. Indeed, even in *Padilla v. Kentucky*, 559 U.S. 356 (2010), in which the Supreme Court held that counsel have an obligation to advise defendants whether a plea carries a risk of deportation, the Supreme Court did not mandate that specific advisements must occur when counsel conveys a plea; rather, the Court noted that the consequence of deportation is

8

"unique," *id.* at 357. In the absence of clearly established Supreme Court law supporting his ineffective assistance claim, Sass cannot obtain federal habeas relief. *See Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) ("it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (citations and internal quotations omitted); *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, . . . it cannot be said that the state court unreasonably applied clearly established Federal law") (citation, internal brackets and quotations omitted).

To be sure, counsel is "required to give the defendant the tools he needs to make an intelligent decision." *Turner*, 281 F.3d at 881 (counsel was not deficient where evidence showed that petitioner was informed of potential death penalty risk if proceeding to trial, and counsel had allowed petitioner to think about offer overnight). Sass avers that counsel failed to provide him these tools because counsel did not inform Sass of his potential exposure at trial and did not recommend that Sass accept the offer. But Sass provides no evidence to support these allegations. Notably, Sass does not contend that counsel advised him to reject the offer, and he admits in his declaration that he does not recall the conversation he had with counsel when the offer was conveyed to him. The declaration of trial counsel states that the offer was conveyed and it was up to Sass to decide whether or not to accept it.

There is no evidence, outside of Sass's own declarations, that trial counsel failed to communicate to Sass the maximum exposure he faced if he proceeded to trial or otherwise failed to communicate the risks he faced if he chose to reject the offer. Sass's self-serving statements, particularly given that he readily admits that he does not recall the substance of his conversation

9

with counsel, are insufficient to establish his allegations that counsel's advice was constitutionally deficient. *See Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (rejecting ineffective assistance claim when, "[o]ther than Womack's own self-serving statement, there is no evidence" to support the claim; *Turner*, 281 F.3d at 881 ("'[S]elf-serving statements by a defendant that his conviction was constitutionally infirm are insufficient to overcome the presumption of regularity accorded state convictions.'" (citation omitted)). Indeed, the letters to his brother that Sass submits with his Traverse indicate that Sass understood that acquittal "[was]n't very likely" and reflected that he had discussions with his attorney about sentencing "goal[s]" and potential negotiations with the District Attorney's Office. Accordingly, the California Supreme Court's rejection of Sass's ineffective assistance claim was not contrary to, or an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. *See Gentry v. Sinclair*, 705 F.3d 884, 900 (9th Cir. 2012) ("Because 'counsel is strongly presumed to have rendered adequate assistance,'" it was not unreasonable for state court to reject claim where petitioner provided no evidence to support it (quoting *Strickland*, 466 U.S. at 690)); *Sandgathe v. Maass*, 314 F.3d 371, 379 (9th Cir. 2002).

B.  Request for an Evidentiary Hearing

Sass additionally argues in cursory fashion that he is entitled to an evidentiary hearing on his ineffective assistance claim. Notably, however, the Ninth Circuit has made clear that holding an evidentiary hearing is not a *per se* requirement for a state court to reasonably determine that a petitioner's allegations are not credible or are otherwise insufficient to warrant relief. *See Hibbler v. Benedetti*, 693 F.3d 1140, 1147 (9th Cir. 2012) ("we have never held that a state court

must conduct an evidentiary hearing to resolve every disputed factual question; such a per se rule would be counter not only to the deference owed to state courts under AEDPA, but to Supreme Court precedent"); *Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004); *Nunes v. Mueller*, 350 F.3d 1045, 1055 (9th Cir. 2003). Sass may be alleging that the state court's failure to hold an evidentiary hearing rendered the state court fact-finding process defective such that this Court may hold one here. But Sass fails to show that the state court overlooked or ignored highly probative evidence. As discussed *supra*, the evidence presented by Sass in the state-court proceeding did not demonstrate that trial counsel was ineffective. Accordingly, there is no basis to presume that the state court's denial of Sass's claim does not deserve AEDPA deference or that an evidentiary hearing is required here.

Moreover, Sass has not satisfied AEDPA's requirements for an evidentiary hearing, which "substantially restricts [a] district court's discretion to grant an evidentiary hearing." *Baja v. Ducharme*, 187 F.3d 1075, 1077 (9th Cir. 1999). 28 U.S.C. § 2254(e)(2) prohibits the Court from holding an evidentiary hearing on a claim where the petitioner has failed to develop the factual basis of the claim in state court unless: 1) the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable, or the claim relies on a factual predicate that could not have been previously discovered through the exercise of due diligence; and 2) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. 28 U.S.C. § 2254(e)(2).

Sass appears to argue that he is exempt from the requirements of § 2254(e)(2) because he requested an evidentiary before the California Supreme Court in support of his state habeas petition. The record before this Court, however, does not reflect that Sass requested an evidentiary hearing with respect to that petition. Even if he did, such minimum effort does not necessarily satisfy the diligence requirement of § 2254(e)(2). *Williams*, 529 U.S. at 437. Here, Sass failed to develop the factual basis of his ineffective assistance claim in the state court proceeding. He could have, but did not, submit evidence attesting that counsel did not provide any advice when counsel conveyed the plea offer to Sass. Instead, Sass submitted a declaration from trial counsel that made no such indication.[3] Accordingly, Sass is not entitled to an evidentiary hearing on his claim either.

## V. CONCLUSION AND ORDER

Sass is not entitled to relief on any ground raised in his Petition, and an evidentiary hearing is not warranted.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the

---

[3] Sass argues that counsel has a conflict of interest in that any successful claim of ineffective assistance of trial counsel will result in an automatic referral to the California State Bar. CAL. BUS. & PROFS. CODE § 6086.7. Any perceived conflict of interest, however, does not alleviate Sass's evidentiary burden.

issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: July 26, 2018.

    /s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge